UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVIE ALLAN WEST,

        Plaintiff,

        v.                                                  Case No. 17-C-1227

SHERIFF JOHN M. MATZ and
CAPTAIN CHRISTIE,

        Defendants.

## DECISION AND ORDER

Plaintiff Stevie Allan West filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Sheriff John M. Matz and Captain Todd Christie of the Winnebago County Sheriff's Office violated his civil rights by placing him in 24-hour disciplinary segregation from April 9, 2017, to September 4, 2017, without affording him due process of law. Presently before the court is Defendants' motion for summary judgment. For the following reasons, Defendants' motion will be granted and the case will be dismissed.

## BACKGROUND

Defendants assert that their proposed findings of fact must be deemed admitted because West did not respond to them in accordance with Civil L.R. 56 (E.D. Wis.). Because West did not respond to the proposed findings of fact, the court will deem Defendants' proposed findings of fact admitted for the purposes of summary judgment. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005); *Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting *pro se* litigants "must follow procedural rules of which they are aware, and district courts have discretion to enforce those rules against such litigants").

Captain Christie is the Winnebago County Jail Administrator and oversees the day-to-day operations of the Jail. Sheriff Matz is the chief law enforcement officer of the Winnebago County

Sheriff's Office. Although he is familiar with the policies and procedures of the Winnebago County Sheriff's Office and Winnebago County Jail, he does not supervise the day-to-day operations of the Jail.

West was originally booked into the Winnebago County Jail on December 30, 2016, after being charged with battery while housed at the Winnebago Mental Health Institute. From April 9, 2017, to September 4, 2017, West was incarcerated in the Jail's administrative confinement. The Jail places inmates in administrative confinement for management purposes when the inmate's behavior constitutes a threat to the safety of the inmate, to the safety of other inmates, or the safety of jail employees. Administrative confinement is not considered to be punishment but is used when an inmate's behavior requires close monitoring. Captain Christie reviews all decisions to house inmates in administrative confinement.

West was placed in administrative confinement for management purposes due to his repeated disturbances in the jail that threatened the health and safety of jail inmates, jail staff, and other Winnebago County employees and that threatened the orderly operation of the Jail. While at Winnebago County Jail, West was housed in administrative confinement on the following dates, for the following reasons. On April 7, 2017, West vandalized the fire suppression sprinkler head, attempted to vandalize his cell window, verbally abused and threatened jail staff, threw urine at jail staff and refused to follow orders, and exited his cell without permission and refused to re-enter. On April 12, 2017, West refused to exit his cell to attend his court hearing, vandalized the fire suppression sprinkler head, smeared feces on cell windows and his body, refused orders, and threatened jail staff. On April 22, 2017, West stored feces in his cell, spit at jail staff, possessed contraband in his cell, verbally abused and threatened jail staff, vandalized jail property, exposed

2

himself to female jail staff, and made sexual threats toward female jail staff. On April 26, 2017, West refused to follow orders and smeared feces on his cell windows.

On May 2, 2017, West smeared feces on his cell window, threatened jail staff, vandalized the fire suppression sprinkler head, and spit at jail staff. The following day, West vandalized the fire suppression sprinkler head and verbally abused jail staff. On May 27, 2017, West vandalized the fire suppression sprinkler head. Two days later, he again vandalized the fire suppression sprinkler head and threatened jail staff. On May 31, 2017, West vandalized the fire suppression sprinkler head.

On June 9, 2017, West vandalized the fire suppression sprinkler head. On June 24, 2017, he vandalized the fire suppression sprinkler head and verbally abused jail staff. Between June 27, 2017 and June 29, 2017, West vandalized the fire suppression sprinkler head three times, threatened jail staff; smeared feces on cell windows, walls, the ceiling, and himself; threw food at jail staff; threw urine at jail staff; and refused to follow orders. On July 7, 2017, West defecated in the shower. On July 11, 2017, he vandalized the trap door in his cell, threw urine at a Winnebago County employee, covered his cell window with toilet paper, and threatened jail staff and a Winnebago County employee. On July 15, 2017, he smeared feces on his cell window, threatened to harm himself, and vandalized jail property. Two days later, he vandalized the fire suppression sprinkler head. On July 19, 2017, West refused to follow orders, attempted self-harm, refused to attend court, smeared feces on his body, possessed contraband, and resisted.

On August 4, 2017, West spit at jail staff, refused to follow orders, and threatened jail staff. The next day, West refused to follow orders, spit at jail staff, resisted, and threatened jail staff. On August 7, 2017, West vandalized the fire suppression sprinkler head. On August 19, 2017, West

urinated out the cell trap door onto the floor, threatened to harm himself, vandalized jail equipment, threatened jail staff, and smeared feces on his body and cell walls.

After each incident, the Jail provided West with a notice of the misconduct and a hearing during which discipline was determined for the infractions. The usual discipline for these types of incidents is the imposition of 10 days of administrative segregation with a loss of privileges. The discipline for each of West's incidents, which was added to the accrued time, led to a substantial accrual of administrative segregation time. Due to the serious nature of West's behavior, the disciplinary nature of West's confinement was eliminated and converted to administrative confinement to better contain and manage his actions.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "[A] factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[A] 'metaphysical doubt' regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and 'the nonmovant fails to demonstrate

a genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Based on a review of his complaint West was allowed to proceed on a claim against Defendants Matz and Christie in their individual capacities for placing him in disciplinary segregation without affording him due process of law as well as a claim against Defendant Matz in his official capacity for Winnebago County's policy, custom, or practice to place him in segregation for an extended period of time.

As an initial matter, West's claim against Matz in his individual capacity will be dismissed. Section 1983 does not provide a cause of action against an individual based upon their supervisory role over another person. *See Odogba v. Wis. Dep't of Justice*, 22 F. Supp. 3d 895, 909 (E.D. Wis. 2014) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 699 n.58 (1978); *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir. 1994)). A defendant will only be liable under § 1983 if the conduct causing the deprivation "occurs at his discretion or with his knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Matz does not oversee the day-to-day operations of the Jail and played no role in the decision to house West in administrative confinement. Because West has presented no evidence that Matz either had personal knowledge of Christie's decision to place West in administrative

5

confinement or was directly involved in the decision, summary judgment in favor of Matz in his individual capacity is appropriate.

The Fourteenth Amendment's Due Process Clause protects persons "against deprivations of life, liberty, or property; and those who seek to invoke its procedural protections must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A pretrial detainee cannot be placed in segregation as punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (citing *Rapier v. Harris*, 172 F.3d 999, 1004–05 (7th Cir. 1999); *Mitchell v. Dupnik*, 75 F.3d 517, 524–25 (9th Cir. 1996)). No process is required, however, if the inmate is placed in segregation not as punishment but rather for managerial purposes. *Id.*; *see also Zarnes v. Rhodes*, 64 F.3d 285, 291 n.5 (7th Cir. 1995) (declining to find that placing a pretrial detainee in administrative segregation constitutes punishment in every instance). That is, so long as the purpose of the administrative confinement is preventative rather than punitive, an inmate is not entitled to notice and a hearing. *Higgs*, 286 F.3d at 438 (citing *Swofford v. Mandrell*, 969 F.2d 547, 549–50 (7th Cir. 1992)).

The Wisconsin Administrative Code provides that a jail inmate may be placed in administrative confinement, or nonpunitive, segregated confinement, to ensure personal safety and security within the jail. Wis. Admin. Code DOC § 350.25. Wisconsin does not limit the amount of time an inmate can spend in administrative confinement. The Seventh Circuit has recognized that "a liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009). This threshold is met when the plaintiff shows "conditions

6

*materially* more onerous than 'the ordinary incidents of prison life.'" *Marion v. Radtke*, 641 F.3d 874, 875 (7th Cir. 2001) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)).

In this case, the conditions of confinement identified by West are not unusually harsh. West maintains that, while he was in administrative confinement, he showered only every other day, did not have access to books or the telephone, did not have cell cleaning, and was not allowed exercise outside of his cell. The temporary denial or restrictions on these activities do not create an atypical and significant hardship of the type required to create a liberty interest. *See, e.g.*, *Hardaway v. Meyerhoof*, 734 F.3d 740, 744–45 (7th Cir. 2013) (finding no constitutional violation for only having access to weekly showers); *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015) (allegation that detainee could not exercise outside was an insufficiently serious constitutional deprivation where detainee failed to allege that his movements were so restricted so as to prohibit any exercise in his cell); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (the detailed hardships of which plaintiff complains, including inability to participate in prison programs, lost wages, denied visitation, telephone, and commissary privileges, are not so atypical and significant as to constitute a deprivation of a liberty interest); *Barnes v. Veath*, No. 14-cv-01277-NJR, 2014 WL 7005190, at *3 (S.D. Ill. Dec. 11, 2014) (dismissing claim based on allegations that plaintiff was held in a "small, isolated dirty cell where inmates are not permitted cleaning supplies" because it is not a "description of materially more onerous conditions imposing an atypical and significant hardship"). As a result, Defendants' motion for summary judgment will be granted, and West's claim against Christie will be dismissed.

Finally, West asserts a *Monell* claim against Sheriff Matz in his official capacity, alleging that a Winnebago County policy, custom, or practice that allows inmates to be placed in administrative confinement for extended periods of time violates his constitutional rights. "A

plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). To be liable for an unconstitutional policy, "[t]he municipal policy or practice must be the 'direct cause' or 'moving force' behind the constitutional violation, which a plaintiff may show directly by demonstrating that the policy is itself unconstitutional." *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). "[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported." *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014); *see also Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."). The court has already concluded that West failed to demonstrate that a constitutional violation occurred. Because West suffered no violation of his rights, there can be no municipal liability. Accordingly, Defendants' motion for summary judgment will be granted, and West's *Monell* claim against Matz will be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 38) is **GRANTED**. The Clerk is directed to enter judgment dismissing the case with prejudice.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of January, 2019..

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court